UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

PNX BOTANICALS, LLC,

        Plaintiff,

vs.

CHEMTECH SERVICES, INC.,

        Defendant.

Case No. 3:20-CV-00186-RCJ-CLB

**ORDER**

Plaintiff sued Defendant in Nevada state court, bringing multiple claims for breach of contract and other related causes of action. Defendant then removed the case to this Court, (ECF No. 1), and subsequently filed a motion to transfer venue or, in the alternative, dismiss without prejudice for *forum non conveniens*, (ECF No. 5), and a partial motion to dismiss for failure to state certain claims, (ECF No. 6). The Court finds there is a valid, applicable, and enforceable forum-selection clause. The Court therefore transfers this case to the United States District Court for the District of Massachusetts and does not reach the merits of the other motion.

**FACTUAL BACKGROUND**

Plaintiff's complaint, (ECF No. 1 Ex. 2 (hereinafter "Complaint")), alleges the following facts: Plaintiff was interested in purchasing a machine which it could use to refine crude hemp oil

for human consumption. It conducted market research to determine which vendor to purchase the necessary machinery from with the assistance of its third-party agent, Botanical Process Solutions LLC ("BPS"). During that research, it came across multiple advertisements for a refining machine known as a "KDL-6," which is manufactured and sold by Defendant.

These advertisements indicated that the KDL-6 was "an advanced piece of machinery, utilizing a technology known as wiped film, short-path, molecular distillation," that it is "a purpose-built machine for the molecular separation of crude Hemp Oil that will concentrate cannabinoids in distillate fraction by removal of high molecular weight materials to a residue fraction to be discarded," and that its "production/feed rate could process two (2) liters per hour."

The parties engaged in negotiations to purchase a KDL-6 unit, which included a demonstration "to determine if the KDL-6 would satisfy the specific needs of [Plaintiff] in refining Hemp Oil." The demonstration used Plaintiff's raw materials and was "successful." Because of this demonstration and representations made by Defendant, Plaintiff entered into a contract with Defendant, the Original Purchase Agreement ("OPA"),[1] to purchase a specific KDL-6 ("Unit").

During or before the execution of the OPA, Defendant made other representations to Plaintiff. Defendant stated that the Unit "was a self-contained purpose-built machine," that it "required little maintenance," and that a "specialized engineer" was not needed to "oversee [its] operations." Defendant also represented that "quality assurance tests would be conducted by [it] on the Unit, using [Plaintiff's] defined requirements, ensuring the refined Hemp Oil would be within the ranges defined by [Plaintiff]." Defendant further represented that oil refined by the Unit did in fact "fall well within the range of materials that [Defendant] is capable of processing."

---

[1] In the Complaint, Plaintiff does not refer to this contract or the delivery contract between it and Defendant by name. Rather, it refers to their nexus of contracts collectively as "the Agreement." The names for those two contracts come from Plaintiff's response to the motion to change venue, (ECF No. 15 at 3:13–18), and are used by the Court to avoid confusion.

In accordance with the OPA, Plaintiff made a fifty-percent down-payment on or about January 15, 2016. Plaintiff and Defendant then executed a Delivery and Installation Agreement ("DIA"), and Defendant issued an invoice to Plaintiff for the remainder of the sale price. Under the DIA, Defendant was to deliver and install the Unit no later than April 22, 2016.

At some point, Plaintiff received notice from Defendant that the Unit would not be ready for delivery and installation until mid-June 2016, at the earliest. Consequently, Plaintiff and Defendant executed the Production Agreement ("PA"), in which Defendant agreed to produce refined hemp oil, using raw materials provided by Plaintiff, until the Unit was installed and operational. Although Plaintiff delivered the raw materials, Defendant did not produce any refined hemp oil.

Additionally, Plaintiff determined that it would rather lease the Unit than purchase it outright, and so it entered into a Master Lease Agreement with non-party NFS Leasing, Inc. ("NFS"), in June 2016. (ECF No. 1 Ex. 2-2 (hereinafter "MLA").)[2] As part of the MLA, Plaintiff and Defendant executed an Assignment of Invoice in which Defendant agreed to rescind the invoice sent to Plaintiff and issue a replacement invoice to NFS. (ECF No. 5 Ex. 3 (hereinafter "Assignment").)[3] Both the MLA and the Assignment provided that Plaintiff could directly enforce all warranties against Defendant on behalf of NFS, and each contained a forum-selection clause.

The enforcement clause of the MLA states that "[Plaintiff] shall be entitled to the benefit of any applicable manufacturer's warranties and such warranties are hereby assigned by [NFS] to [Plaintiff] for the benefit of [Plaintiff], to the extent assignable." (MLA ¶ 14.) The enforcement clause of the Assignment states that "[Plaintiff], [NFS,] and [Defendant] acknowledge that any

---

[2] The copy provided is signed by Plaintiff, but not NFS. It does not have a signature block for Defendant.

[3] Although the copy provided does have signature blocks for Plaintiff, Defendant, and NFS, only Plaintiff and Defendant signed it.

warranties (express or implied) of [Defendant] with respect to the [Unit] shall be enforceable directly by [Plaintiff] on [NSF]'s behalf while [Plaintiff] is in possession of the [Unit]."

The forum-selection clause of the MLA states, in pertinent part, that:

> THIS MASTER LEASE SHALL BE CONSTRUED IN ACCORDANCE WITH, AND SHALL BE GOVERNED BY, THE LAWS OF THE COMMONWEALTH OF MASSACHUSETTS. Any action which is commenced to enforce or interpret any provision of this Master Lease, or which otherwise in any manner relates hereto, shall be commenced only in a court of competent jurisdiction sitting within Massachusetts.

(MLA ¶ 29.) The forum-selection clause of the Assignment states, "This Assignment shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, without giving effect to conflicts of laws principles. [Plaintiff, NFS, and Defendant] submit to the exclusive jurisdiction of the state and federal courts located in Essex County, Massachusetts." Neither party has provided this Court a copy of the OPA, DIA, PA, or any other contract.

After a series of delays, Defendant delivered, assembled, and installed the Unit on July 28–29, 2016. During the test run in the presence of agents of Plaintiff and BPS, the agents noticed "a loud, uneven noise emanating from inside the evaporator." Attempting to remedy this noise, Defendant's employees "used a hex key (Allen Wrench) to torque the hex bolts which attach the glass evaporator compartment to a metal feed plate . . . . [T]he use of the hex key was performed as an adjustment to the alignment of the wiper blades inside the evaporator."

Prior to tightening, BPS's agent warned Defendant's employees that "they should use their hands to tighten the bolts." This warning was "based on BPS representative's prior experience assembling a separate KDL-6 for another BPS customer a few months prior and specific instruction provided to the BPS representative by Mr. John Hart, principle [of Defendant]." The employees failed to heed this advice and "the tightening of the bolts with a hex key by [e]mployees caused the glass evaporator of the Unit to crack." This "render[ed] the Unit inoperable," as Plaintiff

discovered when it attempted to use the Unit on August 5, 2016, and it "failed to achieve the vacuum needed to operate the Unit due to the broken glass evaporator."

Upon further inspection, a BPS representative determined that the Unit was also installed incorrectly in that "the gap of the wiper basket assembly . . . [was] 5 times greater than the maximum allowable tolerance specified in [Defendant's] Installation and Prepping Manual." This incorrect installation contributed to the crack in the glass evaporator. Defendant's employees would have discovered this issue if they had simply "shut down and restarted the Unit after the initial test run," but they failed to do so.

Plaintiff repaired the broken glass evaporator but alleges further deficiencies in the Unit violate the terms of the contracts and Defendant's representations. Plaintiff specifically alleges, among others, the following deficiencies: the Unit refines oil at only fifteen percent of the advertised production rate; the Unit leaks toxic "heat fluid" into the refined oil, rendering it dangerous for human consumption; and the Unit's vacuum continually leaks at the juncture of the feed tank motor to the feed plate," requiring an "unreasonable amount of maintenance" to keep sealed.

Accordingly, Plaintiff alleges that Defendant has breached the OPA, DIA, and PA as well as their respective implied covenants of good faith and fair dealing, breached express warranties and the implied warranties of merchantability and fitness for a particular purpose, employed deceptive trade practices, and made intentional misrepresentations. Plaintiff therefore seeks compensatory and punitive damages.

**LEGAL STANDARD**

A defendant in a civil case may move to transfer venue under 28 U.S.C. § 1404. "When a defendant files such a motion [based on a valid forum-selection clause], . . . a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties

clearly disfavor a transfer." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 52 (2013). Whether a forum-selection clause applies to a case is matter of contract interpretation according to state law, but "[t]he enforceability of forum[-]selection clauses is governed by federal law." *Peterson v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013) (citing *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988)).

## ANALYSIS

Defendant argues that the forum-selection clauses in the MLA and the Assignment dictate that this case needs to be decided in a Massachusetts court. The Court finds that Defendant has standing to invoke the forum-selection clause of the Assignment, that this clause is valid and applicable to this case, and that the clause is enforceable. This Court thus transfers the case to the United States District Court for the District of Massachusetts. As the forum-selection clause in the Assignment is sufficient to dictate the outcome of this case, the Court declines to rule on whether the forum-selection clause in the MLA is also sufficient.

The Court must first determine whether Defendant has standing to invoke the forum-selection clause of the Assignment.[4] This is not a close call as Defendant was a signatory party to the contract. This is sufficient to invoke standing. *See Manetti-Farrow*, 858 F.2d at 514 n.5.

The Court now turns to whether the assignment is a valid contract. Plaintiff argues that the Assignment is illusory as to Defendant. This argument is flawed. According to the Assignment, the Plaintiff "assigns to [NFS] all of [Plaintiff's] rights to purchase the Products which are set forth in the [attached invoice] from [Defendant]." Assignment ¶ 1. Plaintiff claims that since the invoice was already issued to NFS that the Assignment had no effect, however, that is incorrect. The

---

[4] Plaintiff appears to only argue that Defendant does not have standing to invoke the clause in the MLA, (*see, e.g.*, ECF No. 15 at 7 ("[Defendant] has no standing to enforce the forum[-]selection clause contained in the [MLA]"), but it does at one place state in a header, "[Defendant] does not have standing to enforce the Massachusetts forum[-]selection *clauses*." (ECF No. 15 at 5 (emphasis added).)

Assignment—not the invoice—changed the relationship between Defendant and Plaintiff, as it also states, "Vendor consents to the foregoing assignment." (*Id.* ¶ 2.) The Assignment therefore made it such that NFS instead of Plaintiff was the buyer of Defendant's machine.[5]

Finding that the forum-selection clause is part of a valid contract, the next issue for the Court consider is whether this case falls within the scope of the clause. As this is an issue of contract interpretation the Court repeats the text of the clause at issue:

> This Assignment shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, without giving effect to conflicts of laws principles. [Plaintiff, NFS, and Defendant] submit to the exclusive jurisdiction of the state and federal courts located in Essex County, Massachusetts.

This forum selection clause provides no limit to which claims it applies, so this case falls within the scope of the clause. Even if the Court interprets the second sentence strictly to only apply to cases relating to the Assignment, the Court still finds that this clause applies to this case. Because of this Assignment, Plaintiff is enforcing many of NFS's rights as the actual owner of the KDL-6. For this reason, the forum-selection clause directly relates to this case.

Lastly, the Court must determine whether the forum-selection clause is enforceable. A forum-selection clause is presumptively valid, and the party challenging the enforcement of the provision bears a heavy burden. *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009). Plaintiff claims that it is unfair and unreasonable to enforce the clause because neither Plaintiff nor Defendant reside in Massachusetts and most of the events relating to case occurred in Nevada. These facts are wholly insufficient to overcome the strong presumption of enforceability. "Only under extraordinary circumstances *unrelated to the convenience of the parties* should a § 1404(a)

---

[5] While not raised by the parties, the agreement to submit to a Massachusetts forum would amount to consideration among the parties. "Consideration may consist either of some right, interest, profit, or benefit accruing to one party, or some forbearance, disadvantage, detriment, loss, or responsibility given, suffered, or undertaken by the other." 17 C.J.S. Contracts § 122. The parties all agreed to forego bringing cases arising between them in other forums.

motion be denied." *Atl. Marine Constr. Co.*, 571 U.S. at 62 (emphasis added). The facts in *Atl. Marine Constr. Co.* are analogous to this one, where a Texas corporation contracted with a Virginia corporation to build a child-development center at Fort Hood in the Western District of Texas. *Id.* at 53. A dispute arose between the parties, the Texas corporation brought the suit in the Western District of Texas, despite a contract provision that cases must be litigated in Virginia. *Id.* There the Court found "no such exceptional factors" and transferred the case to Virginia. *Id.* at 62. This Court therefore finds that the clause is enforceable.

## CONCLUSION

IT IS HEREBY ORDERED that Defendant's Motion to Change Venue (ECF No. 5) is GRANTED.

IT IS FURTHER ORDERED that this case is transferred to the United States District Court for the District of Massachusetts.

IT IS SO ORDERED.

DATED: February 4, 2021.

_____
ROBERT C. JONES
United States District Judge